**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| STEVEN FLOYD VOSS, ) | 3:08-cv-0342-RCJ (RAM) |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| MEGAN McCLELLAN, et al., ) | |
| ) | |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. #185- Doc. # 188.)[1] Plaintiff has opposed (Doc. # 214), and Defendants have replied (Doc. # 216 ). After a thorough review, the court recommends that Defendants' motion should be granted.

**I. BACKGROUND**

At all relevant times Plaintiff Steven Floyd Voss (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC), currently assigned to Northern Nevada Correctional Center. (Pl.'s Am. Compl. (Doc. # 75) 1, Defs.' Mot. for Summ. J. (Doc. # 185) 1, Pl.'s Opp. to Mot. for Summ. J. (Doc. # 214) 3.) The allegations of Plaintiff's complaint pertain to events that took place while Plaintiff was housed at Lovelock Correctional Center

---

[1] Refers to the court's docket number.

1  (LCC) and Ely State Prison (ESP). (Doc. # 75 1.) Plaintiff, a *pro se* litigant, brings this action
2  pursuant to 42 U.S.C. § 1983. (*Id*.) The remaining Defendants are various NDOC officials and
3  employees. (Doc. # 75 2(a)-(n), Doc. # 185 1.) Plaintiff seeks punitive damages as well as
4  injunctive relief. (Doc. #75 9(b)-(c).)

5  Plaintiff originally filed his complaint in state court and it was successfully removed to
6  federal court. (*See* Doc. # 25 1-3.) Plaintiff alleges violations of his civil rights guaranteed by
7  the United States Constitution as well as violations of the Americans with Disabilities Act
8  (ADA) and Rehabilitation Act (RA). (Doc. # 75.)

## II.  LEGAL STANDARD

10  The purpose of summary judgment is to avoid unnecessary trials when there is no
11  dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,
12  18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in
13  favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing
14  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is
15  appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits
16  show that there is no genuine issue as to any material fact and that the movant is entitled to
17  judgment as a matter of law." *Id*. (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds
18  could differ on the material facts at issue, however, summary judgment is not appropriate.
19  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

20  The moving party bears the burden of informing the court of the basis for its motion,
21  together with evidence demonstrating the absence of any genuine issue of material fact.
22  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence
23  in an inadmissible form, only evidence which might be admissible at trial may be considered
24  by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

25  In evaluating the appropriateness of summary judgment, three steps are necessary: (1)
26  determining whether a fact is material; (2) determining whether there is a genuine issue for
27  the trier of fact, as determined by the documents submitted to the court; and (3) considering

1 that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to
2 materiality, only disputes over facts that might affect the outcome of the suit under the
3 governing law will properly preclude the entry of summary judgment; factual disputes which
4 are irrelevant or unnecessary will not be considered. *Id*.

5       In determining summary judgment, a court applies a burden shifting analysis. "When
6 the party moving for summary judgment would bear the burden of proof at trial, 'it must come
7 forward with evidence which would entitle it to a directed verdict if the evidence went
8 uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing
9 the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*
10 *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)(citations omitted).
11 In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
12 moving party can meet its burden in two ways: (1) by presenting evidence to negate an
13 essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving
14 party failed to make a showing sufficient to establish an element essential to that party's case
15 on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If
16 the moving party fails to meet its initial burden, summary judgment must be denied and the
17 court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398
18 U.S. 144, 159-60 (1970).

19       If the moving party satisfies its initial burden, the burden shifts to the opposing party
20 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*
21 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,
22 the opposing party need not establish a material issue of fact conclusively in its favor. It is
23 sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
24 parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*
25 *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the
26 nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations
27 that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)
28

(citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

## III. DISCUSSION

**A.   CLAIMS ASSERTED AGAINST THE STATE OF NEVADA AND NDOC**

Plaintiff maintains that he is asserting claims against the State of Nevada and the NDOC. (Doc. # 185 3 at ¶ 10, Ex. A 18:3-25.) While Plaintiff claims he is asserting claims against them, neither the State of Nevada nor NDOC have been named or served as Defendants in this matter. Moreover, the Eleventh Amendment bars suits against states as well as state agencies as they are considered an "arm of the state" and not a "person" for the purposes of § 1983. U.S. Const. amend. XI; see also *Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir. 1997), *amended*, 127 F.3d 1135 (9th Cir. 1997); *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836 (9th Cir. 1997); *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). Therefore, any claims against the State of Nevada and NDOC should be dismissed.

**B.   ADA/RA**

Plaintiff's claims concerning violation of the Americans with Disabilities Act and Rehabilitation Act are set forth in Counts 1 and 2. (Doc. # 75 4(b), 5(b)-(c).) In Count 1, Plaintiff alleges that his rights have been violated under the ADA, 42 U.S.C. § 12101 and the RA, 29 U.S.C. § 794, because Plaintiff suffers from a physical disability affecting his hands and his ability to write, and on May 28, 2007, the State took away Plaintiff's access to his

4

typewriter without providing an accommodation. (Doc. # 75 4(b).) In Count 2, Plaintiff claims that his rights under the ADA and RA have been violated because the State of Nevada and its agencies have impeded Plaintiff's equal access to the State's programs, services, and activities by removing certain published legal reference materials and replacing them with access to printed case law. (Doc. # 75 5(b)-(c).) Plaintiff claims that he has a vision disability and that the prison has reduced the font size of the legal materials depriving him of any benefit from the legal materials. (*Id.*)

Counts 1 and 2 are only asserted against the State of Nevada and NDOC. (Doc. # 75 4(a)-(b), 5(a)-(b).) As set forth above, Plaintiff cannot maintain a suit against the State of Nevada or NDOC. Therefore, these claims should be dismissed.

**C.    COUNT 3**

In Count 3, Plaintiff alleges that he was denied adequate access to courts because: (1) the State refused his privilege of confidential communication with his designated attorney-in-fact; (2) right to use typewriters was taken away; (3) and he was denied use of legal mail procedures. (Doc. # 75 6(f)-(h).) Plaintiff asserts violations of his rights under the First, Fourteenth, and Sixth Amendments.

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). To establish a violation of the right of access to the courts, a prisoner must establish that he or she suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See Lewis*, 518 U.S. at 348 (citation omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008)(explaining that "[f]ailure to show that a 'non-frivolous legal claim has[s] been frustrated' is fatal" to a claim for denial of access to courts)(citing *Lewis*, 518 U.S. At 353, n.4). "Actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim." *Id.* at 348 (citation and internal quotations omitted).

5

Here, Plaintiff has failed to establish actual injury as a result of his alleged denial of his First Amendment right to access the courts.

Next, the court considers whether Plaintiff has established a violation of his Fourteenth Amendment right in connection with his allegation that he has been deprived his interest in having confidential and privileged communication with his designated attorney-in-fact. In analyzing the procedural safeguards owed to an inmate under the Due Process Clause, the court considers two elements: (1) whether the inmate suffered a deprivation of a constitutionally protected liberty or property interest, and (2) whether the inmate suffered a denial of adequate procedural protections. *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003)(citations omitted), *abrogated on other grounds in Hayward v. Marshall*, 603 F3d 546 (9th Cir. 2010).

The court finds that Plaintiff has failed to show he has a valid liberty interest. Administrative Regulation (AR) 722 governs access to the judicial process. "General Correspondence" is defined as mail between an inmate and someone other than those approved for privileged correspondence. (Doc. # 185 Ex. H-3 at 288.) Legal mail is privileged correspondence, and must be addressed to an attorney or legal representative. (*Id.* at 298.) Privileged correspondence includes, among other things, mail between an inmate and an attorney listed with a State Bar Association, a recognized legal assistance agency, or an attorney representative. (*Id.* at 274.) A "Legal Representative" is defined as a non-attorney authorized by court to represent an inmate. (*Id.*) Plaintiff claims that he is entitled to privileged correspondence between himself and his mother, who he asserts is his designated attorney-in-fact. There is no evidence that Plaintiff's mother is a licensed attorney, or that she has been designated to represent him by a court. As such, Plaintiff cannot assert that he has been deprived of a valid liberty interest.

Finally, Plaintiff's claim that he has been denied his Sixth Amendment right to counsel fails because this right only applies to criminal prosecutions. *See* U.S. Const. amend. VI.

Summary judgment should be granted as to Count 3.

### D. COUNT 4

Plaintiff alleges that his access to courts was frustrated because he was not allowed to reproduce blank legal forms, depriving him of the use of such forms and precluding him from sharing such forms with other inmates. (Doc. # 75 6(h).) Plaintiff also asserts that NDOC does not provide prisoners access to legal assistance by persons reasonably knowledgeable in the law. (*Id*. At 6(h)-(i).) Plaintiff claims that the foregoing conduct violates his rights under the First, Fourteenth, and Sixth Amendments.

First, with respect to the access to courts claim under the First Amendment, as stated above, prisoners do have a constitutional right of access to courts. *Lewis*, 518 U.S. at 348. This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, a plaintiff asserting denial of access to courts must establish "actual injury" in the form of "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim." *Lewis*, 518 U.S. at 348 (citation and internal quotations omitted). While Plaintiff alleges generally that there are deficiencies at NDOC resulting in denial of access to courts, he fails to establish actual injury as a result of being denied access to blank legal forms or because NDOC does not provide inmates access to legal assistance by persons adequately trained in the law.

Second, with respect to Plaintiff's due process claim, the court must analyze NDOC's Administrative Regulations (AR) precluding inmates from stockpiling blank legal forms in light of the factors set out in *Turner v. Safely*, 482 U.S. 78 (1987). In *Turner*, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89. In determining the reasonableness of the regulation, the court must look at four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether there are alternative means of

exercising the right; (3) what is the impact accommodation of the asserted right will have on guards and inmates, and on the allocation of prison resources generally; and (4) whether there are easy alternatives evidencing that the regulation is an exaggerated response to prison concerns. *Id.* at 89-91.

AR 711 sets out the limitations for the volume and type of personal property that an inmate may possess. (Doc. 185 Ex. H-2 at 263.) AR 722 governs inmate access to the courts. (Doc. # 185 Ex. H-3.) Inmates are provided forms required by state and federal courts without charge, for preparation and processing of legal documents. (*Id.* Ex. H-3 at 279.) AR 7.22 also provides that "[c]opy machines located in law libraries are not to be used for any copy work other than for inmates who have current litigation..." (*Id.* at 290.)

Defendants assert that NDOC has a general policy prohibiting inmates from stockpiling, trading or lending fill-in-the-blank legal forms because: (1) inmates are prohibited from transferring and lending property which is generally needed to prevent trading of personal property for contraband; (2) inmates are provided with fill-in-the-blank forms routinely required by courts; (3) budget constraints limit copying resources such as ink, toner, and paper; (4) cell sizes limit the space available to store excessive documents; (5) excess legal paper inside cells poses a fire danger; and (6) there is limited space outside cells needed to store excess legal work. (Doc. # 185 26-27, Ex. I at ¶¶ 6-13.)

The court will now apply the *Turner* factors. First, the court finds that there is a legitimate relationship between the subject policy and preventing inmates from trading documents for contraband, conserving budget resources, preventing fire danger, conserving storage space, and providing inmates with forms for active litigation. Second, pursuant to NDOC policy, inmates are provided with the necessary forms when needed for active litigation. Third, the court gives deference to Defendants' assertion that: (1) extra security resources would be required to assure that the forms are not traded for contraband, (2) allowing this would result in the papers taking up excess space in cells or storage areas, and (3) it would copying resources being used unnecessarily. Fourth, the court is not aware of a ready

8

1 alternative. Accordingly, the court finds that the policy is reasonably related to legitimate
2 governmental interests.
3 With respect to Plaintiff's claim that his Sixth Amendment right to counsel has been
4 violated, this claim also fails because this right only applies to criminal prosecutions. U.S.
5 Const. amend. VI.
6 Summary judgment should be granted as to Count 4.

**E.    COUNT 5**

Plaintiff alleges that his access to courts was inhibited because Defendants removed from Plaintiff's use and possession, his case files and related materials, related to active litigation, determining that they constitute excessive property in his cell, and placing them in a storage area. (Doc. # 75 6(i)- (j).) Plaintiff asserts that this violates his rights under the First and Fourteenth Amendments.

As to Plaintiff's access to courts claim under the First Amendment, Plaintiff again fails to establish actual injury, and therefore, his claim fails. (*See* Doc. # 185 Ex. A at 90:6-21.)

As to the Fourteenth Amendment due process claim, the court finds that Plaintiff has not established he has been deprived of a liberty interest because he admits that he had access to his excess legal papers in the property room, and when the property room sergeant was unable to retrieve his legal papers, staff arranged another time for his access. (Doc. # 185 Ex. A at 81:24-25, 82:1-13, 85:11-22.)

Summary judgment should be granted as to Count 5.

**F.    COUNT 6**

First, Plaintiff alleges that Defendants seized numerous legal documents belonging to him when preparing his personal property for transfer to ESP from LCC. (Doc. # 75 6(k)-(l).) He claims that even though he provided Defendants with a brass slip to cover postage costs, the documents were not mailed to Plaintiff's counsel, in violation of his right of access to courts and his due process rights. (*Id.*) Next, Plaintiff alleges that Defendants engaged in a conspiracy and retaliated against him when his custody level was increased from medium to

9

1 maximum security with his transfer from LCC to ESP. (*Id.* at 6(l).) Plaintiff asserts that this
2 placed unreasonable limitations on his access to his court-appointed post-conviction counsel
3 and investigator and ability to defend his case. (*Id.*) Plaintiff asserts that this transfer was in
4 retaliation for his exercise of his constitutionally protected disability rights, his rights of access
5 to the courts, freedom of speech and due process. (*Id.*) Finally, Plaintiff claims that upon his
6 arrival to ESP, he was not immediately provided with his personal property, and it was delayed
7 for one week. (*Id.* at 6(l)-6(m).) Plaintiff asserts that during this one week period, he was
8 deprived of access to his legal materials and to his prescription medications. (*Id.* at 6(m).)
9 Plaintiff claims that when he did get his property, two pairs of medically necessary orthopedic
10 footwear were removed as unauthorized. (*Id.*) He further alleges that a liquid substance
11 destroyed numerous documents, photographs, and other personal property. (*Id.*) He also
12 claims that six of the boxes he used to store his legal papers were destroyed and he had to
13 purchase additional boxes. (*Id.* at 6(n).)

### 1. Access to courts

15 Plaintiff generally alleges that he was deprived of his First Amendment right to access
16 the courts, but he has not established actual injury. While Plaintiff claims that his access to
17 courts was denied when he was transferred from LCC to ESP because it placed unreasonable
18 limitations on Plaintiff's access to his court-appointed post-conviction counsel and
19 investigator in Case No. CR97-P-2077 (Doc. # 75 6(l)), there is no evidence to show that he
20 was unable to meet a filing deadline or present a claim, or experienced a similar deprivation.

### 2. Due Process

22 To the extent Plaintiff asserts a due process violation as a result of his transfer from
23 LCC to ESP, the court finds that this claim fails. The Due Process Clause does not grant
24 prisoners a liberty interest in staying at a particular institution. *Meachum v. Fano*, 427 U.S.
25 215, 224 (1976).
26 ///

10

### 3. Retaliation

Within the prison context, a viable claim of First Amendment retaliation contains five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004). The protected conduct should be a "substantial" or "motivating" factor in the retaliatory actions. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). Thus, a prisoner must (1) submit evidence to establish a link between the exercise of constitutional rights and alleged retaliatory action, and (2) demonstrate that his or her First Amendment rights were actually chilled by the alleged retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *see Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

"The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt,* 65 F.3d at 806 (9th Cir. 1995). In analyzing a retaliation claim, a court should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

Defendants assert that Plaintiff was not transferred in retaliation for exercising his constitutional rights, but instead, for legitimate penological purposes. (Doc. # 185 34, Ex. I at ¶¶ 14-21.) Defendants submit the declaration of Robert LeGrand, who was Associate Warden at LCC at the time in question, and is currently Warden at LCC. (Doc. # 185 Ex. I at ¶¶ 3-4.) On March 12, 2008, Plaintiff was seen by classification because of his criminal and disciplinary history. (*Id.* at ¶ 14.) It is NDOC policy that inmates who have a life without parole sentence who become disruptive in medium security are returned to ESP, which houses close and maximum custody inmates. (*Id.* at ¶ 15.) Plaintiff was serving a life sentence without parole for first degree murder. (*Id.* at ¶ 16.) Plaintiff became disruptive on the LCC

11

1  yard and had names of staff members and their home addresses, which is considered a threat
2  to staff safety. (*Id.* at ¶ 17.) Plaintiff also had three violations of the Code of Penal Discipline.
3  (*Id.* at ¶ 18.) Plaintiff had already been assigned to disciplinary segregation for abuse of the
4  inmate grievance process. (*Id.* at ¶ 19.) As a result, Plaintiff's risk factor score qualified him
5  to be classified to close or maximum security at ESP. (*Id.* at ¶ 20.) Plaintiff was transferred
6  to ESP on March 14, 2008. (*Id.* at ¶ 21.)

The court finds that Defendants have met their burden of negating an element of Plaintiff's claim by submitting proof that Plaintiff's transfer was for legitimate penological reasons. Plaintiff failed to produce evidence of the absence of legitimate correctional goals. Accordingly, Defendants are entitled to summary judgment on the retaliation claim.

**4.   Conspiracy**

"To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). A conspiracy claim brought under section 1983 requires proof of (1) an agreement or meeting of the minds to violate constitutional rights, and (2) an actual deprivation of constitutional rights resulting from the alleged conspiracy. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quotations and citations omitted).

There is no evidence to establish an agreement or meeting of the minds among Defendants to deprive Plaintiff of his constitutional rights.

**5.   Personal Property**

It appears that Plaintiff asserts a violation of his Fourth Amendment right against unreasonable searches and seizures as well as the deprivation of a property interest without due process.

///

Plaintiff alleges that items of property, including two pairs of orthopedic footwear were taken, and some items were damaged in violation of his due process rights. The Due Process Clause protects prisoners from being deprived of property without due process of law. *Wolff*, 418 U.S. At 556. Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). To the extent Plaintiff is asserting an unauthorized intentional deprivation of his property, he fails to state a due process claim because the State of Nevada provides a meaningful post deprivation remedy for such a loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); s*ee also* Nev. Rev. Stat. § 41.041, Nev. Rev. Stat. § 41.0322.

Plaintiff also asserts a due process violation as a result of the delay in receiving his prescription medications upon his transfer to ESP. Defendants submit evidence to establish that nurses go to each of the housing units at ESP at least twice a day to administer drugs, which would permit Plaintiff to request his keep-on-person medications. (Doc. # 185 37, Ex. D at ¶¶ 9-17.) In addition, Plaintiff's medical records do not indicate that he requested medications from ESP medical personnel from March 13, 2008 until March 21, 2008. (Doc. # 185 37, Ex. B at ¶ 27.)

The court finds that in light of the evidence presented by Defendants, Plaintiff has not established he was deprived of a liberty interest in his keep-on-person medication when the receipt of his property was delayed for one week in March 2008. Plaintiff could have requested the mediation via the nursing staff at ESP. The evidence shows that Plaintiff's medical records do not include a request for any mediations during this time period. (Doc. # 185 Ex. B at ¶ 27, B-1, C.) To the extent Plaintiff argues that he could not request or submit a kite on this issue, this claim is belied by the record which establishes that Plaintiff submitted thirty-four kites from the period of January 3, 2007 through April 19, 2010. (Doc. # 185 Ex. B at ¶ 22.) Finally, Plaintiff fails to tie this allegation to a specific defendant. (*Id.* at 37.)

Plaintiff asserts that his legal papers were seized upon transfer in violation of his due process rights. Plaintiff says that he filled out a brass slip to cover the postage to send his legal

13

1 papers to his counsel. Defendants assert that there is no record of such a brass slip, and the
2 destruction of any legal papers is the result of Plaintiff's failure to execute a brass slip
3 authorizing postage. (Doc. # 185 31.) Defendants further assert that there is no limit on
4 indigent legal postage, and therefore, if Plaintiff had filled out a brass slip for postage to mail
5 his legal documents, it would have been provided. (*Id.*)

Defendants provide the declaration of Megan McClellan, who was the Law Library Supervisor, during the relevant time period. (Doc. # 185 Ex. G at ¶ 3.) As part of her duties at that time, she obtained legal postage brass slips, and if Plaintiff had elected to send his legal materials to his counsel pursuant to AR 722.08.11, he would have been provided with the postage to mail the boxes to his attorney, which would have been noted on the LCC Outgoing Legal Mail Log. (*Id.* at ¶¶ 26-27.) She obtained copies of Plaintiff's brass slips for the relevant time period, one for $1.48 and the other for $.58, which would have been insufficient to send the five or six boxes Plaintiff alleges he intended to send to his counsel. (*Id.* at ¶¶ 27-32.) In addition, she obtained copies of Plaintiff's trust account transactions for the relevant time period, and the statements do not indicate that postage was authorized to send the boxes as he claims. (*Id.* at ¶¶ 33-35.) Plaintiff does not present any evidence to establish that he did submit a brass slip for postage to send the excess legal materials to his counsel, and therefore fails to raise a genuine issue of material fact as to this claim.

To the extent Plaintiff asserts a violation of his Fourth Amendment rights, the court finds that this claim fails. "[P]risoners have no legitimate expectation of privacy" and "the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

Summary judgment should be granted as to Count 6.

**G.   COUNT 7**

Plaintiff alleges that the State routinely engages in the seizure of prisoners' proper person legal papers to read them without the prisoners' knowledge and consent, and engages in censorship of such papers. (*Id.* at 6(h).)   Plaintiff alleges that on March 5, 2008, he

14

relinquished various legal documents to an Inmate Legal Assistant assigned to Unit 5 at LCC to facilitate facsimile reproduction of the documents, but on March 6, 2008, the documents were taken by Defendant McClellan, who read them without Plaintiff's knowledge or consent. (Doc. # 75 6(n)-(o).) Plaintiff asserts that Defendant McClellan identified objectionable content in the documents and issued Plaintiff an Unauthorized Mail Notice, requiring him to either delete the objectionable portions or mail the document out of the facility. (*Id.* at 6(o).)

Plaintiff admits that the document in question was a complaint, which was filed in Pershing County, without the objectionable content- confidential addresses of NDOC employees. (Doc. # 185 Ex. A 97:14-17, Doc. # 1.) In the absence of actual injury, Plaintiff cannot maintain a claim that his First Amendment right to access the courts was denied.

The United States Supreme Court has held that "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). Further, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* at 528 n. 8. Plaintiff does not assert a viable Fourth Amendment claim.

Plaintiff asserts that the practice of censoring legal documents violates his due First Amendment and due process rights. While Plaintiff asserts that the State routinely engages in the seizure of legal documents in violation of the First and Fourteenth Amendments, he has not produced evidence of such a practice. Instead, he merely presents evidence of one incident where he contends his legal paperwork was censored by prison officials. The evidence shows that a person associated with the law library was copying Plaintiff's legal paperwork, with his permission, and it was discovered that it contained the names and addresses of NDOC employees. (Doc. # 75 6(o), Doc. # 185 Ex. A at 97:15-20.) The objectionable material was redacted, and Plaintiff admits that he was able to file the legal complaint without the objectionable information. (Doc. # 185 Ex. A at 97:14-17, *see also* Doc. # 1.)

The court must apply the *Turner* factors to determine whether the regulation in question is reasonably related to a legitimate penological interest.

15

Defendants assert that the document in question was required to be redacted because it contained the names and addresses of NDOC employees. (Doc. # 185 37-41.) Defendants claim they have a valid penological interest in protecting the privacy, health, safety, and security of NDOC employees from the publication of their confidential home addresses. (*Id*. at 38.)

Pursuant to AR 568, information classified as confidential includes information that, if disclosed, would endanger the health and/or safety of other persons. (Doc. # 185 Ex. H-1 at 259.) In addition, inmates are not permitted access to information which, if disclosed, would disclose personal or confidential information. (*Id.* at 260.) In addition, Nev. Rev. Stat. § 289.025(1), § 289.010, § 289.220(1), and NAC § 284.718 provide for the confidentiality of the home addresses of correctional officers. (*See* Doc. # 185 38-39.)

First, the court finds that the regulating prohibiting Plaintiff from possessing a document with prison officials' confidential information furthers an important government interest of maintaining the safety and security of corrections officers. Second, the court finds that there are alternative means of exercising the right, *e.g.*, filing the document without the confidential information. Third, accommodating the right would significantly impact NDOC employees because it would jeopardize their safety. Fourth, the court is not aware of an available, easy alternative response to this concern. Accordingly, the court finds that Defendants meet the four *Turner* factors.

Summary judgment should be granted as to Count 7.

**H.  COUNT 8**

Plaintiff asserts that AR 722.01, requiring inmates to identify "new litigation" or an assigned case number upon entering the law library and when requesting services is not founded on a legitimate penological interest, but instead serves to identify and track prison litigators and prevent them from assisting other prisoners in their legal pursuits. (Doc. # 75 6(q).) Plaintiff claims that due to his segregated status at ESP, he has no direct access to the law library and no access at all to an Inmate Legal Assistant, and instead, must submit his

16

requests concerning legal materials to the Law Library Supervisor. (*Id.* at 6(r).)

With respect to Plaintiff's claim that AR 722.01, governing inmate access to law libraries, is not founded on a legitimate penological interest, Defendants assert that conserving resources is a legitimate penological interest for requiring this information because maintaining the law libraries comes at a cost to NDOC and Nevada taxpayers. (Doc. # 185 43.)

Applying the *Tuner* factors, the court finds that Defendants requiring inmates to identify new litigation or a case number is reasonably related to the legitimate governmental purpose of conserving state resources because this limits inmates conducting research to direct appeal, writs, and suits challenging their conditions of confinement. First, the court finds that there is a clear rational connection between the regulation and the reason proffered by NDOC. Second, the court finds that Plaintiff can engage in legal research if he provides a case number or identifies new litigation. Third, allowing persons not engaged in current or prospective legal work would put a tremendous strain on resources available for law libraries. Fourth, there are no identifiable readily available alternatives to allow for conservation of law library resources. Accordingly, the court finds that the regulation is reasonably related to legitimate penological purposes.

While Plaintiff states that his Fourth Amendment rights were violated in Count 8, he includes no allegations pertaining to a Fourth Amendment violation.

With respect to Plaintiff's claim that he has been denied access to courts in relation to the inadequacies of inmate legal assistants, the court finds Plaintiff has failed to establish actual injury.

Summary judgment should be granted as to Count 8.

///
///
///

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' motion for summary judgment.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: February 8, 2011.

_____
UNITED STATES MAGISTRATE JUDGE